**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| T.C., MR J.C., and MRS. K.C., *in their own right*, | ) ) ) |
| | ) Civil Action No. 17-1507 |
| Plaintiffs, | ) Magistrate Judge Maureen P. Kelly |
| | ) |
| v. | ) |
| | ) Re: ECF No. 37 |
| HEMPFIELD AREA SCHOOL DISTRICT, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| HEMPFIELD AREA SCHOOL DISTRICT, | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| v. | ) |
| | ) |
| CENTRAL WESTMORELAND CAREER & TECHNOLOGY CENTER, | ) ) |
| | ) |
| Third-Party Defendant. | ) |

## OPINION AND ORDER

**KELLY, Magistrate Judge**

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs T.C. and his parents Mr. J.C. and Mrs. K.C., in their own right ("Plaintiffs"),

initiated this action on November 17, 2017, against Defendant Hempfield Area School District

("Hempfield"), alleging claims pursuant to 42 U.S.C. § 1983, the Individuals with Disabilities

Education Improvement Act (the "IDEA"), 20 U.S.C. §§ 1400 *et seq.*, Section 504 of the

Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act, and the Fourteenth

Amendment to the United States Constitution. ECF No. 1.  Plaintiffs' claims arise out of a series

of bullying episodes suffered by T.C., a student with a disability, that included alleged physical

and sexual assaults, being locked in a room by peers, and peers pounding on the restroom door when T.C. was using the facility. Each of the incidents is alleged to have occurred while T.C. was a student in the Hempfield Area School District and, pursuant to his Individual Education Plan ("IEP"), was enrolled in the Central Westmoreland Career & Technology Center ("CTC") at the CTC Vocational Technical Program ("VTP").

On February 12, 2018, Hempfield filed a Partial Motion to Dismiss certain of Plaintiffs' claims pursuant to Rule 12(b)(6). ECF No. 9. Subsequent to the denial of the Partial Motion to Dismiss, ECF No. 14, Hempfield filed an Answer and Affirmative Defenses, ECF No. 15. On December 26, 2018, Hempfield filed a Motion for Leave to Join CTC as a Third-Party Defendant pursuant to Rule 14 of the Federal Rules of Civil Procedure. ECF No. 26. The Court granted the motion on January 11, 2019, and Hempfield filed its Third-Party Complaint against CTC. ECF Nos. 30 and 31.

In the Third-Party Complaint, Hempfield sets forth a claim for contribution and/or indemnity as to Counts V through X of Plaintiffs' Complaint (Count I),[1] and a state law claim for negligence arising out of CTC's breach of a duty owed to Hempfield to provide Hempfield students attending the VTP proper supervision and a safe environment from bullying and sexual assault (Count II). ECF No. 31.

In response to the Third-Party Complaint, CTC filed a Motion to Dismiss Pursuant to Rule 12(b)(6), and Motion for a More Definite Statement Pursuant to Rule 12(e). ECF No. 37. CTC contends that Hempfield is the real party in interest and bears all potential liability

---

[1] Counts V and VI of Plaintiff's Complaint allege a Section 1983 claim for the violation of T.C.'s substantive due process rights under the Fourteenth Amendment of the United States Constitution; Count VII sets forth a Section 1983 claim for the violation of J.C. and K.C.'s Fourteenth Amendment liberty interest in unimpeded parenting and family integrity; Count IX alleges Section 1983 for inadequate training of staff; and Count X sets forth a claim for attorneys fees and costs pursuant to Section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act. ECF No. 1.

regardless of CTC's actions or inaction with regard to T.C.'s attendance at the VTP. ECF No. 38 at 2-6. In addition, CTC argues that as to Plaintiffs' underlying claims, CTC did not bear a qualifying special custodial relationship to T.C. upon which a duty to protect him from abuse can be predicated, nor did it create or enhance a risk of danger or harm upon which liability otherwise may be imposed under the Fourteenth Amendment to the United States Constitution. Id. 6-10. Further, CTC contends the Plaintiffs' Complaint fails to allege facts sufficient to state a Fourteenth Amendment claim for the violation of protected parental liberty interests. Id. 10-11. With regard to Plaintiffs' claim for failure to train, CTC contends that Plaintiffs' have failed to sufficiently identify the training that was not provided, or facts establishing the requisite deliberate conduct on CTC's part upon which liability may be based. Accordingly, CTC seeks dismissal of Hempfield's third-party complaint or, in the alternative, an Order compelling Plaintiffs to make a more definite statement of their failure to train claim. Id. at 11-13. Finally, as to Plaintiffs' demand for attorney's fees, CTC contends that in the absence of liability under 42 U.S.C. § 1983, Plaintiffs' claim should be dismissed. Id. at 12.

Hempfield has filed a brief in opposition to CTC's Motion to Dismiss the Third-Party Complaint, ECF No. 46, contending that CTC misapprehends the law with regard to indemnity and contribution by an agent. Hempfield further indicates that its indemnity and contribution claims against CTC are not duplicative of Plaintiffs' claims against Hempfield and as such, CTC has not stated a legal basis for dismissal of the third-party complaint. Id. at 3-4.

Plaintiffs also filed a brief in opposition to CTC's Motion to Dismiss, arguing that the underlying Complaint adequately sets forth facts upon which the requisite "special relationship" may be predicated and otherwise sufficiently states claims for the violation of Plaintiffs' Fourteenth Amendment rights. ECF No. 38.

For the reasons that follow, the Motion to Dismiss Pursuant to Rules 12(b)(6) and Motion for More Definite Statement Pursuant to Rule 12(e) will be granted in part and denied in part.

## II.     STANDARD OF REVIEW

A third-party defendant "must assert any defense against the third-party plaintiff's claim under Rule 12" and "may assert against the plaintiff any defense that the third-party plaintiff has to the plaintiff's claim." Fed. R. Civ. P. 14(a)(2)(A); (a)(2)(C). A motion to dismiss a third-party complaint is generally analyzed under Federal Rule of Civil Procedure 12(b)(6).

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See California Pub. Empl. Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., citing Papasan v. Allain, 478 U.S. 265, 286 (1986). The United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels and conclusions, and a formulaic recitation of the

elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s of his claim]").

The United States Court of Appeals for the Third Circuit has prescribed the following three-step approach to determine the sufficiency of a complaint:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011), *citing* Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)(*quoting* Iqbal, 556 U.S. at 675, 679).

## III.  DISCUSSION

### A.  Agency and Indemnity/Contribution

Federal Rule of Civil Procedure 14(a)(1) provides that a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Based on this language, the defendant cannot plead a claim that the third-party defendant is directly liable to the plaintiff or a claim that the third-party defendant is solely responsible for the plaintiff's injury. Toberman v. Copas, 800 F. Supp. 1239, 1242 (M.D. Pa. 1992). Instead, the defendant must plead the secondary or derivative liability of the third-party defendant, meaning that if the defendant is found liable to the plaintiff, the third-party defendant is liable to the defendant on a theory of indemnity or contribution, or some other form of derivative liability. Id. See also FDIC v. Bathgate, 27 F.3d 850, 873 (3d Cir. 1994) (Rule 14 allows a defendant (as a third-party plaintiff) to bring a third-party defendant into the case when the third-party defendant is liable to the defendant on all or part of the plaintiff's claim against

the defendant); <u>Kohn v. Sch. Dist. of City of Harrisburg</u>, No.11-109, 2012 WL 1598096 (M.D. Pa. May 7, 2012) (Rule 14 is only procedural and does not itself create a right to indemnity or contribution).

In this instance, Hempfield relies on statutory contribution arising under Pennsylvania law, as well as common law indemnity. The right to indemnity may arise when a person not actively at fault has been compelled by a legal obligation to pay damages that have been caused by the tortious conduct of another. <u>Id.</u> at 270 (quoting <u>Builders Supply Co. v. McCabe</u>, 77 A.2d 368, 370 (Pa. 1951)).  Contribution in Pennsylvania is governed by the Pennsylvania Uniform Contribution Among Tortfeasors Act, 42 Pa. Cons. Stat. Ann. § 8324. A right to contribution arises only among joint tortfeasors. <u>Id.</u> In <u>Lasprogata v. Qualls</u>, 397 A.2d 803, 805 n. 4 (Pa. Super. 1979), the Pennsylvania Superior Court noted that under the act, joint tortfeasors "either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury" or they are "two or more persons [who] owe to any other the same duty and by their common neglect such other is injured."

The district court in <u>Hay v. Somerset Area School District</u>, No. 16-229, 2017 WL 5029057 (W.D. Pa. Oct. 31, 2017), dismissed a third-party complaint seeking contribution filed by the school district against a teacher who had allegedly sexually abused the underlying plaintiff while she was a student.  The district court concluded that in Pennsylvania, joint tortfeasor liability requires both parties to owe identical duties to plaintiff and that the violation result in a single indivisible injury.  The district court found the plaintiff's claims against the school district arose from its deliberate indifference to her constitutional right of bodily integrity and for subjecting plaintiff to a sexually hostile education environment.  Redress was sought "not for [the third-party defendant's] misconduct," but for the school district's policies, procedures, and

protocols, which independently caused injury. Id. at *5-6. In addition, the plaintiff's injury was not "single" or "indivisible." Id. While the teacher was alleged to have sexually assaulted the plaintiff, the underlying complaint alleged that the school district failed to prevent, investigate, or discipline employee sexual misconduct. The district court therefore determined the claims against each party were significantly different and could not form the basis of a claim for contribution.

In reaching its decision in Hay, the district court further noted that a claim for indemnity was precluded because the claim was not one "where an employer is held liable for an employee's tortious act; …. [the plaintiff] has not even brought a tort claim. Rather, she is attempting to hold SASD liable for its own alleged failure to investigate, discipline, and prevent instances of sexual misconduct by school employees, in violation of the Constitution and federal statutory law." Id. at *6 n. 8.

In this instance, Hempfield brings a derivative liability claim and a tort claim against CTC, so as to support its claims for common law indemnity and contribution. In this regard, Hempfield's claims against CTC mirror Plaintiffs' underlying claims against Hempfield. Both Hempfield and CTC are alleged to have owed T.C. identical obligations with regard to training, supervision, investigation, discipline, and the prevention of bullying at the VTP. Further, both the original and the third-party complaint allege that Hempfield and CTC owed T.C.'s parents identical duties with regard to providing required information for purposes of developing T.C.'s educational plan, and the injuries sustained by Plaintiffs appear identical. ECF No. 31 ¶¶ 33-35. Accordingly, at this early stage of the litigation, Hempfield has stated a claim for contribution.

Hempfield's claim for indemnification alleges that Hempfield is secondarily liable for CTC's acts. Pursuant to the Articles of Agreement for Operation (the "Agreement"), CTC

concedes it was required to provide vocational skill training and technical instruction to pupils referred to the VTP by participating school districts, including Hempfield. Id. ¶ 11, and see ECF No. 38 at 3-5. Hempfield alleges that the Agreement charges CTC with responsibility for employing and training staff, as well as supervising staff and students at the VTP. Id. ¶¶ 11-12. Accordingly, Hempfield alleges that its own culpability is secondary, if at all, to that of CTC, who was responsible for Plaintiff's educational environment in the first instance. ECF No. 31 ¶¶ 33-35, and see ECF No. 14 at 10, T.C. v. Hempfield School District, 2018 WL 3707419 * 5 (W.D. Pa. Aug. 3, 2018)(Hempfield manifested an intent that VTP would act on its behalf to provide T.C. with mandated educational services, and VTP accepted the undertaking).

CTC challenges liability for both contribution and indemnity based upon its agency relationship with Hempfield. CTC contends that Hempfield is the entity charged to fulfill all obligations to provide T.C. an education and, as such, Hempfield is solely and exclusively liable for Plaintiffs' injuries. However, Pennsylvania common law provides indemnity as an equitable remedy where necessary to prevent an unjust result, such as where a defendant's liability "arises not out of its own conduct, but out of a relationship that legally compels the defendant to pay for the act or omission of a third party." Morris v. Lenihan, 192 F.R.D. 484, 489 (E.D. Pa. 2000). In this regard, a principal may seek indemnification from an agent, when liability for the tort or conduct of the agent is imputed to the principal. See, e.g., Builders Supply, 77 A.2d at 370. Given CTC's acknowledgement that it was "acting within the scope of its agency relationship with the District" at the time of the incidents alleged in the underlying complaint, a legally sufficient relationship exists upon which Hempfield's indemnity claim may be asserted. ECF No. 38 at 6.

**B.      Legal Sufficiency of Claims Asserted by Plaintiff**

Pursuant to Rule 14(a)(2)(C) of the Federal Rules of Civil Procedure, CTC raises

substantive defenses to Plaintiffs' underlying claims at Counts V, VI, VII, IX and X, and

contends that it otherwise is entitled to dismissal because Plaintiffs cannot sustain a Section 1983

claim for the violation of the Fourteenth Amendment.[2]

### 1.  Counts V and VI of Plaintiff's Complaint

The Due Process Clause of the Fourteenth Amendment provides that no state shall

"deprive any person of life, liberty, or property, without due process of law."  U.S. CONST.

AMEND. XIV, § 1. At Counts V and VI, Plaintiffs have alleged the violation of T.C.'s right to

be free from personal violence or other injury, as protected by the substantive component of the

Due Process Clause.  See Phillips v. Cty. of Allegheny, 515 F.3d at 235 ("Individuals have a

constitutional liberty interest in personal bodily integrity that is protected by the Due Process

Clause of the Fourteenth Amendment.") (citing D.R. v. Middle Bucks Area Vocational Tech.

Sch., 972 F.2d 1364, 1368 (3d Cir. 1992)).

CTC challenges Plaintiffs' Fourteenth Amendment substantive due process claim based

upon the absence of a relationship sufficient to impose an affirmative obligation to protect T.C.

from private violence committed by other students.  For this proposition, CTC relies upon

DeShaney v. Winnebago Cnty. Dep't of Social Servs., 489 U.S. 189 (1989), and Morrow v.

Balaski, 719 F.3d 160 (3d Cir. 2013).  In DeShaney, the United States Supreme Court held that

"[a]s a general matter, … a State's failure to protect an individual against private violence simply

does not constitute a violation of the Due Process Clause.  DeShaney, 489 U.S. at 197.  Rather,

---

[2] Plaintiffs raised nine claims in the original complaint.  ECF No. 1.  However, Plaintiffs did not label any claim as Count VIII.  Thus, counts eight and nine are identified in the original complaint as Count IX and Count X.

"the Due Process Clause forbids the state *itself* from depriving 'individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.'" Morrow, 719 F.3d at 166 (italics added)(quoting DeShaney, 489 U.S. at 195); and see DeShaney, at 197 ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors .… Its purpose was to protect the people from the State, not to ensure the State protected them from each other.").

Despite the recognition that the State has no affirmative duty of care or protection from personal violence committed by third parties, there are two narrow exceptions. The first arises when the State has a "special relationship" with the plaintiff. This exception typically applies when the state "takes a person into its custody and holds him there against his will." Id. at 199. The second exception arises when the State affirmatively and by its own actions, creates the danger that causes the plaintiff's injury. Morrow v. Balaski, 719 F.3d 160, 167 (3d Cir. 2013). In this action, CTC contends Plaintiffs have not alleged facts sufficient to sustain claims under either exception.

### a. Special Relationship

In Morrow, the United States Court of Appeals for the Third Circuit conducted a review of the nature of a substantive due process claim in relation to a suit filed on behalf of students who were subjected to bullying in the form of threats, assaults, and racial intimidation at the hands of two peers. The Third Circuit affirmed the dismissal of the complaint based in large part upon its earlier holding in Middle Bucks, that the special relationship required to support a substantive due process claim is not created by virtue of a state's mandatory school attendance

laws or a school's actual knowledge of past criminal conduct directed at a student by his or her peers. <u>Morrow</u>, 719 F.3d at 167-176.  <u>Middle Bucks</u> presented the Court with a strikingly similar fact pattern to the disturbing behavior alleged to have been experienced by T.C.  The plaintiffs were two students, one of whom suffered hearing and communication impairments. The plaintiffs alleged that several male students physically, verbally, and sexually assaulted them during a graphic arts class over a period of several months.  Despite allegations that school personnel were aware of the danger and had fielded complaints related to the abuse, the Third Circuit concluded that the school defendants' authority over the student-plaintiffs was insufficient "to create the type of physical custody necessary to bring it within the special relationship noted in <u>DeShaney</u>.' <u>Id.</u> at 1372."

In <u>Morrow</u>, the Court acknowledged that the narrow exception for a "special relationship" continues to have viability, but held that it is appropriately limited to situations of custodial control such as incarceration, involuntary commitment to a mental facility, or in a foster care context.  <u>Morrow</u>, 719 F.3d at 169, 173.  Quoting <u>Nicini v.</u> Morra, 212 F.3d 798, 808 (3d Cir. 2000)(<em>en banc</em>), the Court explained that plaintiffs were not "dependent upon the state … to meet [their] basic needs…. [U]nlike children in foster care, students in public schools continue to be primarily dependent on their parents for their care and protection, not on their school." <u>Id.</u>

The school district's knowledge of two court-issued restraining orders issued against the bullies did not expand the duties owed by it "to ensure … compliance with the orders or to otherwise enforce them." <u>Id.</u> at 172.  While the Court was deeply concerned with the plight faced by plaintiffs and the lack of safety from bullies, the Court concluded that under established

precedent, redress "must come from a source other than the United States Constitution." <u>Id.</u> at 176.

In this instance, Plaintiffs' allegations do not overcome the limitations identified by the Third Circuit in <u>Morrow</u> nor state the quality or kind of control sufficient to fall with nature of "special relationship" to give rise to an obligation on the part of Hempfield or CTC under the Fourteenth Amendment. T.C.'s basic needs are met by his parents, who retain daily custody over him. While the Complaint alleges knowledge of the potential for abuse and actual knowledge of teasing, pursuant to <u>Middle Bucks</u> and <u>Morrow</u>, these factors are not sufficient to create the relationship necessary to state a Fourteenth Amendment claim. Accordingly, the Motion to Dismiss Count V of Plaintiffs' Complaint will be granted.

**b. State Created Danger**

Plaintiffs alternatively argue that the Complaint alleges facts within the "state created danger" exception to the general rule that the Due Process Clause imposes no duty on state actors to protect citizens from private harm. ECF No. 47 at 5-7. This theory recognizes that "liability may attach where the state acts to *create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." <u>Morrow</u>, at 177 (citing <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1201 (3d Cir. 1996)). Under this theory, a plaintiff must prove the following elements:

1) The harm ultimately caused was foreseeable and fairly direct;

2) A state actor acted with a degree of culpability that shocks the conscience;

3) A relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

4) A state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006). CTC contends that even if read in a light most favorable to Plaintiffs, the Complaint does not plead facts sufficient to state a constitutional violation. ECF No. 38 at 9. CTC points to the absence of a sufficient relationship and the absence of allegations that would establish affirmative conduct that created the danger or made T.C. more vulnerable. In this regard, CTC construes Plaintiffs' claim as arising solely from T.C.'s placement at VTP. Id. Plaintiffs respond, however, that the substantive due process claim arises not merely from T.C.'s placement at VTP, but from Hempfield and CTC's conduct in ignoring T.C.'s safety, failing to provide the level of supervision required by T.C.'s IEP, and willfully disregarding the IEP determination that T.C. required a one-to-one aide. ECF No. 47 at 6-7. Plaintiffs contend that these lapses rendered T.C. more vulnerable, sufficient to state a claim under the state created danger exception. Id.

As to CTC's challenge concerning the required relationship, "'[i]n the state-created danger context, the relationship between a state and a plaintiff need not be 'custodial' but rather …. that the plaintiff was a foreseeable victim in tort.'" Keener v. Hribal, 351 F. Supp. 3d 956, 973 (W.D. Pa. 2018). In this regard, Plaintiffs have alleged sufficient facts to establish the necessary relation under this element of the state-created danger analysis. T.C. was a student with an IEP at VTP, and it was generally understood that he had the potential to be the object of teasing due to his impairments. However, as to the fourth element, the Court is compelled to find that, as in Middle Buck and Morrow, neither Hempfield nor CTC's alleged inaction is sufficient to place Plaintiffs' claims within the state-created danger exception.

[A]s to the fourth element, there must be "an allegation and subsequent showing that state authority was affirmatively exercised." <u>Bright v. Westmoreland Cty.</u>, 443 F.3d 276, 282 (3d Cir. 2006). "It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." <u>Id.</u>

This fourth prong can be difficult to apply. Courts have readily admitted that "the line between action and inaction may not always be clear." <u>Bright</u>, 443 F.3d at 282; <u>see also</u> <u>Morrow v. Balaski</u>, 719 F.3d 160, 177 (3d Cir. 2013), as amended (June 14, 2013). The Third Circuit has elaborated, however, that the issue raised under the fourth element is whether "the state actors 'used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur.'" <u>Bright</u>, 443 F.3d 276, 283 (3d Cir. 2006) (internal citations and quotations omitted). Ultimately, the fourth element intends to distinguish cases where state officials might have done more, from cases where officials created or increased the risk itself. <u>Morrow</u>, 719 F.3d 160, 179 (3d Cir. 2013).

<u>Keener v. Hribal</u>, 351 F. Supp. 3d at 974. In <u>Keener</u>, the plaintiff brought a substantive due process claim against, *inter alia*, his school district, arising out of a horrific incident of school violence. During the incident, a student brought knives to school and stabbed 20 of his classmates. The district court found that despite allegations that the school district knew of the student-assailant's mental illness, and was aware that security personnel would be unlikely to afford adequate protection in the event of an emergency, the plaintiff failed to state an actionable due process claim. Such conduct aligned "with those cases where officials might have done more, as opposed to those cases where officials created or increased the risk of harm itself." <u>Id.</u> at 974.

In reaching its decision, the district court found instructive the Third Circuit's determination in <u>Morrow</u> that despite the school district's knowledge of complaints of bullying, physical attacks on the plaintiffs in the school lunchroom, and its awareness of two court-issued no-contact orders intended to protect the plaintiffs, the school district's failure to enforce a disciplinary policy permitting a bully to return to school after a suspension was not in the nature of affirmative action required to trigger a duty to protect. <u>Id.</u> at 975 (citing <u>Morrow</u>, 719 F.3d at

174-75). Such inaction did not make the children "more vulnerable than they would have been had the administrators stood by and done nothing at all." Id. The Third Circuit in Morrow noted that were it to find that a school district's use of discretion to take or not take specific actions sufficient to state a claim, then the state-created danger exception would swallow the rule. The exception, rather, is intended where "officials created or increased the risk itself."

In Doe v. Plum Borough School District, No. 17-32, 2017 WL 3492542 (W.D. Pa. August 15, 2017), the district court found a sufficiently stated due process claim. The complaint contained allegations that a school official was not only aware of instances of inappropriate conduct between students and teachers, but the official affirmatively took steps to dissuade or otherwise interfere with required reporting of suspected abuse to law enforcement and child protection officials. Such conduct was deemed to place children in the school at greater risk of harm than had the official not attempted to protect a notoriously predatory teacher. Id. at *7. Similarly, in Kneipp v. Tedder, 95 F.3d at 1209-1210, the Third Circuit found that police conduct affirmatively created or enhanced danger, sufficient to maintain a state-created danger claim. After arresting Mrs. Kneipp's husband, and despite severe intoxication that rendered Mrs. Kneipp unable to stand by herself, police officers forced her to walk home alone and in the cold. Mrs. Kneipp subsequently fell down an embankment, and suffered hypothermia resulting in brain damage. The Third Circuit found that in the circumstances alleged, state conduct created the danger of injury because the officers put the woman "in a worse position after the police intervened than she would have been if they had not done so." Id. Because the affirmative acts of the police placed Mrs. Kneipp in danger, they were required to take additional steps to ensure she made it home safely.

In this instance, the Court is compelled to find that Plaintiffs have not alleged the affirmative acts necessary to state a constitutional claim. Plaintiffs' claim is that T.C. was assigned to attend school with inadequate supervision, such that school personnel would not know if he were in danger, despite knowledge that he was prone to be targeted by bullies. ECF No. 1 ¶ 199. Such allegations, like those in <u>Keener</u> and <u>Morrow</u>, suggest that Hempfield could and should have done more to protect T.C., but do not suffice to allege that it (or CTC) created the danger sufficient to state a claim of an unconstitutional exercise of authority. Accordingly, the Motion to Dismiss Count VI of Plaintiffs' Complaint will be granted.

### c. Violation of Liberty Interest – Count VII

Plaintiffs' Complaint alleges that Hempfield violated K.C. and J.C.'s Fourteenth Amendment liberty interest "in the parenthood and companionship of their child, T.C., and the maintenance and integrity of their family." ECF No. 1 ¶ 205. Plaintiffs allege that Hempfield's failure to supervise T.C., resulting in his victimization, was the proximate cause of their loss. <u>Id.</u> ¶ 206. CTC moves to dismiss this claim for failure to state a claim upon which relief can be granted. ECF No. 38 at 10-11.

The Fourteenth Amendment protects the fundamental liberty interest that parents have in making decisions regarding the custody, care, and management of their children. <u>Parents United For Better Sch., Inc. v. Sch. Dist. of Philadelphia Bd. of Educ.</u>, 148 F.3d 260, 274–75 (3d Cir. 1998); <u>Croft v. Westmoreland Cnty. Children & Youth Servs.</u>, 103 F.3d 1123, 1125 (3d Cir. 1997) (citing <u>Lehr v. Robertson</u>, 463 U.S. 248, 258 (1983); <u>Myers v. Morris</u>, 810 F.2d 1437, 1462 (8th Cir. 1987) *overruled on other grounds by* <u>Burns v. Reed</u>, 500 U.S. 478 (1991)). This liberty interest, however, is not absolute. <u>Anspach v. City of Phila.</u>, 503 F.3d 256, 261 (3d Cir. 2007). Conflict with a parent's liberty interest will not lightly be found and only occurs when

there is some "manipulative, coercive, or restraining conduct by the State." Id., at 266. In this regard, a parent's liberty interest will be implicated only if the state's action "deprived them of their right to make decisions concerning their child," and not when the action merely "complicated the making and implementation of those decisions." C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 184 (3d Cir. 2005); see also J.S. ex rel. Snyder v. Blue Mountain Sch. Dist., 650 F.3d 915, 933–34 (3d Cir. 2011); Bridges ex rel. D.B. v. Scranton Sch. Dist., 66 F. Supp. 3d 570, 588 (M.D. Pa. 2014), aff'd, 644 F. App'x 172 (3d Cir. 2016).  Moreover, to sufficiently state a due process claim for interference with the parent-child relationship, a plaintiff must allege that the defendant deliberately sought to harm that relationship.  Clark v. Conahan, 737 F. Supp. 2d 239, 263 (M.D. Pa. 2010)(citing Chambers ex rel. Chambers v. School Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 192 (3d Cir. 2009).

Plaintiffs allege Hempfield withheld information in the course of IEP planning meetings regarding bullying and deprived T.C.'s parents from the opportunity to make appropriate decisions regarding school placement.  ECF No. 1 ¶¶ 205-06.  This Court has determined that these allegations are sufficient to state an associational discrimination claim pursuant to the ADA and RA.  T.C. v. Hempfield Area Sch. Dist., 2018 WL 3707419 at *8.  However, withholding information does not rise to the deliberate interference between parent and child required under existing Fourteenth Amendment jurisprudence.  In this regard, actionable interference has not been found where a clinic failed to advise parents that it had provided emergency contraception to a child, which led to a medical emergency after the child returned home.  Anspach, 503 F.3d at 262-67.  Nor has a constitutional violation been found where state officials failed to provide a parent with available information regarding a juvenile's probation proceedings, and this failure allegedly led to the juvenile's adjudication as a delinquent. Howard v. Chester Cty. Office of

Juvenile Prob. & Parole, No. 18-2209, 2019 WL 1233780, at *7 (E.D. Pa. Mar. 15, 2019). In this instance, Plaintiffs similarly have not alleged facts in the nature of deliberate interference by CTC with protected parenting interests of T.C.'s parents. Accordingly, the Complaint fails to state a Fourteenth Amendment claim, and the Motion to Dismiss Count VII will be granted.

### d. Failure to Train – Count IX

CTC acknowledges this Court's prior order finding Plaintiffs' allegations of Failure to Train claim sufficient at this early stage of the litigation. T.C. v. Hempfield Area Sch. Dist., 2018 WL 3707419, at *6. Despite the clarity of the Court's decision, CTC moves to dismiss the claim asserting that Plaintiffs have failed to plead facts sufficient to state a claim or, alternatively for an order requiring Plaintiffs to file a more specific complaint. ECF Nos. 37, 38 at 11, 13.

Substantively, failure to train under Title II of ADA is actionable where the failure leads directly to the denial of a needed accommodation or otherwise improper discrimination. Haberle v. Troxell, 885 F.3d 170 (3d Cir. 2018). In this regard, Plaintiffs' Complaint alleges an ADA claim, and Hempfield, as third-party plaintiff, alleges a claim for contribution and/or indemnity against CTC. Accordingly, at this stage of the litigation, and in the absence of any additional basis for dismissal which has not been considered previously by the Court, the Motion to Dismiss Court IX is denied.

### d. Attorney's Fees – Count X

CTC seeks dismissal of Plaintiffs' demand for attorney's fees for failure to state a claim pursuant to Section 1983 or any other statute providing for attorney's fees. ECF No. 38. Plaintiffs' Complaint, however, alleges claims pursuant to Section 504 of the Rehabilitation Act and the ADA, both of which permit recovery of attorney's fees. 29 U.S.C.A. § 794a; 42 U.S.C.A. § 12205 (West). The Motion to Dismiss Plaintiffs' claim for attorney's fees is denied.

## IV.    CONCLUSION

For the foregoing reasons, Third-Party Defendant's Motion to Dismiss is properly granted in part and denied in part.  Accordingly, the following Order is entered:

## ORDER

AND NOW, this 1st day of May, 2019, upon consideration of CTC's Motion to Dismiss Pursuant to Rule 12(b)(6), and Motion for a More Definite Statement Pursuant to Rule 12(e), ECF No. 37, and the briefs filed in support and in opposition thereto, ECF Nos. 38, 46, and 47, and for the reasons set forth in the accompanying Memorandum, IT IS HEREBY ORDERED that the Motion to Dismiss is granted in part and denied in part as follows:

(1)    The Motion to Dismiss third-party claims for contribution and indemnity set forth in the Third-Party Complaint, ECF No. 31, filed on behalf of Hempfield Area School District, is DENIED;

(2)    The Motion to Dismiss filed pursuant to Rule 14(a)(2)(C) as to Plaintiffs' claims is granted and denied as follows:

   a.    The Motion to Dismiss Count V – Violation of 42 U.S.C. § 1983 Breach of a Special Custodial Relationship is GRANTED;

   b.    The Motion to Dismiss Count VI – Violation of the Fourteenth Amendment State Created Danger is GRANTED;

   c.    The Motion to Dismiss Count VII – Violation of 42 U.S.C. § 1983 Mr. J.C. and Mrs. K.C. v. The District – Violation of Liberty Interest is GRANTED;

d. The Motion to Dismiss Count IX – Violation of 42 U.S.C. § 1983 Failure to Train is DENIED; and,

e. The Motion to Dismiss Count X – Claim for Attorneys' Fees and Costs is DENIED.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record by Notice of Electronic Filing